IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PATRICIA A. PATSAKIS,          )
                    Plaintiff,  )
                                )
          vs.                   )          Civil Action No. 04-1662
                                )
EASTERN ORTHODOX FOUNDATION    )          Judge Cercone
and EASTERN ORTHODOX            )          Magistrate Judge Hay
FOUNDATION OF STEEL VALLEY,     )
                    Defendants.  )

REPORT AND RECOMMENDATION

I.       Recommendation

        It is respectfully recommended that the motion for partial summary judgment submitted

on behalf of Plaintiff (Docket No. 23) be denied.  It is further recommended that the motion for

summary judgment submitted on behalf of Defendant Eastern Orthodox Foundation of Steel

Valley (Docket No. 27) be denied.  It is further recommended that the motion for summary

judgment submitted on behalf of Defendant Eastern Orthodox Foundation (Docket No. 30) be

denied.

II.      Report

        Plaintiff, Patricia A. Patsakis, brings this action pursuant to 42 U.S.C. §§ 2000e to

2000e-17 (Title VII), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 (PHRA).

She alleges that the Defendants, Eastern Orthodox Foundation (EOF) and Eastern Orthodox

Foundation of Steel Valley (EOFSV), discriminated against her in retaliation for engaging in

conducted protected under these statutes.  Specifically, she alleges that: 1) Defendants retaliated

against her for filing a lawsuit against her former employer, which had terminated her in

retaliation for her complaints about a sexually hostile work environment, when they informed her

on January 15, 2004 that her position had been eliminated; and 2) Defendants retaliated against

her for filing a charge of discrimination against them arising out of their decision to eliminate her

position when they failed to hire her for the newly-created position and terminated her employment effective March 31, 2004.

Presently before this Court for disposition are motions for summary judgment filed by both Defendants and a motion for partial summary judgment filed by Plaintiff.  For the reasons that follow, all of the motions should be denied.

Facts[1]

EOF was founded by Father George Hnatko in 1966.  (Hnatko Dep. at 16.)[2]  EOF is the parent company that founded EOFSV in 2002.  (Id. at 16-17.)  Father Hnatko is the Executive Director of EOF and he is also the CEO and president of the Board of EOFSV.  (Id. at 12-13.) EOF is located in Indiana, Pennsylvania, while EOFSV operates in Homestead.  However, EOFSV's registered office is 8715 Route 422 Highway East, Penn Run, Box 432, Indiana, Pennsylvania 15701, the same address as EOF.  (By-Laws of EOFSV § 2.1.)[3]

Each organization has a Board of Directors and shares fourteen of its fifteen Board members.  Each organization's Board handles hiring and firing decisions relating to management employees.  (Hnatko Dep. at 19, 21-24; Hnatko Jr. Dep. at 15-16[4]; Gesue Dep. at 33-34, 41-42,

---

[1]These facts are taken from Plaintiff's Statement of Undisputed Material Facts in Support of Brief for Partial Summary Judgment (Docket No. 24), the Concise Statement of Material Facts filed by EOF (Docket No. 28), the identical document filed by EOFSV (Docket No. 31), and Plaintiff's Counterstatement of Material Facts in Opposition to Defendants' Motion for Summary Judgment (Docket No. 38).  Defendants have not submitted a response to Plaintiff's two sets of statements with numbered paragraphs and citations to the record, as required by Local Rule 56.1(C)(1).  Pursuant to the Local Rules, these facts should be deemed admitted.  W.D.PA.LR. 56.1(E).  Moreover, except for a few facts as noted below, Defendants do not appear to contest Plaintiff's facts.

[2]Docket No. 39 Ex. 1.

[3]Docket No. 26. Ex. 14.

[4]Docket No. 26 Ex. 2.

44[5].)  Father Hnatko's son, George Hnatko, Jr., is the Administrator of EOF and the Executive Director of EOFSV.  (Hnatko Jr. Dep. at 16.)

Plaintiff was hired as Director of EOF's Steel Valley (Homestead) campus on January 1, 2003.  (Hnatko Dep. at 36; Patsakis Dep. at 21-23[6].)  She was an at-will employee and had no employment contract.  (Patsakis Dep. at 188.)  Father Leon Pachis was the director of development for the Homestead Campus beginning in September or October 2002.  (Id. at 22.)  On December 10, 2003, Father Pachis was asked to leave his position for a number of reasons detailed by the Board.  (Id. at 101, 103-04.)  With his departure, Plaintiff assumed his duties as director of development from December 11, 2003 until the end of her employment.  (Id. at 190; Patsakis Aff. II ¶ 3[7].)

Plaintiff states that she told Father Hnatko during the interview that she had had problems with her prior employer, the Greek Orthodox Diocese of Pittsburgh ("the Diocese").  However, Father Hnatko said he did not want to know the specifics because it did not pertain to him.  (Patsakis Dep. at 30; Patsakis Aff. II ¶ 1.)

On December 5, 2003, an article appeared in the Pittsburgh Post-Gazette detailing Plaintiff's lawsuit against the Diocese.  (Hnatko Dep. at 55, 56, 99.)  The article explained that Patsakis and Angela Sklavos had filed a federal complaint on December 3, 2003 against the Diocese and its national office, the Greek Orthodox Diocese of America, in which they alleged that they had been retaliated against for complaining about a sexually hostile work environment.  (Docket No. 39 Ex. 9.)[8]  Father Hnatko read the article that day.  (Hnatko Dep. at 55.)

---

[5]Docket No. 26 Ex. 15.

[6]Docket No. 33 Ex. 1.

[7]Docket No. 39 Ex. 29.

[8]The case, Civil Action No. 03-1851, is currently pending before Judge Hardiman.

3

On December 10, 2003, Father Hnatko called a Board meeting at which Plaintiff's litigation was discussed.  (Hnatko Dep. at 57-58[9]; Docket No. 26 Ex. 4.)  Immediately after the Board meeting, Father Hnatko and Jan Jennings, Chairman of the Board, met with Plaintiff and expressed to her their disappointment in "her not telling [them] about her suit against the Greek Orthodox Diocese" or "her plan to do this."  (Docket No. 26 Ex. 3.)  Plaintiff told them that her lawyer had instructed her not to discuss the case with anyone.  (Id.; see Patsakis Dep. at 103.)

On December 14, 2003, Jan Jennings sent Plaintiff an email which stated as follows:

> Was Father George angry at you?  Absolutely!  Although the content of your litigation is none of his business, the fact that you were facing a problem that could go public should have been disclosed to him....  Father George has been given the "cold shoulder" by a number of church leaders both in and out of the Greek Diocese and he had no idea why.  Innocent as it may have been ... it was appropriate and relevant to disclose that a problem existed ... without disclosing the content of that problem.  Father George feels like he was taken advantage of by ... you ....

(Docket No. 39 Ex. 20.)

On January 10, 2004, the Board met and decided "to send Patty Patsakis a letter stating that we are dissatisfied with her overall performance.  This way we will have a record of our dissatisfaction.  We will mail her the letter within the next week."  (Docket No. 39 Ex. 12.)  That same day, Father Hnatko sent Plaintiff a letter discussing, for the first time, alleged deficiencies in her performance.  (Patsakis Dep. at 51-52, 200.)  The letter stated as follows:

> I want you to know that I continue to be disappointed in your performance.  The last time we met in [December][10] face to face and I shared with you my disappointment and concern that you were involved in litigation with a Sister Diocese of the Eastern Orthodox Faith and you did not disclose[] this to me prior to or since becoming an employee of the Eastern Orthodox Foundation.  Now I understand why the phones have gone dead from all of my prior contacts with the Greek Orthodox Church.  Common courtesy would have suggested that I be informed that this problem was looming.  It has been a great embarrassment to me both personally and professionally.

---

[9]Docket No. 26 Ex. 1.

[10]The letter erroneously said "November."

4

Since our meeting you have not contacted me even once to discuss the operations of the EOF of the Steel Valley. I do not know when you arrive and I do not know when you leave. I do not know what you are doing to develop the campus and I am not receiving any communication from you whatsoever. This is totally unacceptable.

This morning we had a Board of Directors meeting and Jan Jennings handed me some financial information that he received from you. Why am I receiving this kind of information second hand? Jan Jennings is a member of the Board of Directors, but I am your reporting official. You should be briefing me on a regular basis with respect to your comings and goings and your efforts to make the EOF of the Steel Valley a going concern. I have no idea what you are doing or are not doing.

I would like you to respond to this letter in writing by Friday, January 16, 2004.

(Docket No. 39 Ex. 3.)

On January 14, 2004, Plaintiff wrote a letter in response to Father Hnatko's criticisms. (Docket No. 39 Ex. 32.) On January 15, 2004, Father Hnatko, George Hnatko, Jr. and Jan Jennings met with Plaintiff and informed her that her position would be combined with a fundraiser position (for the Indiana campus). They told her that she could apply for the new position when it was advertised in the newspaper. The newly-created position was entitled "Campus Administrator and Director of Fund Development." (Am. Compl. ¶¶ 9-10; Patsakis Dep. at 196; Hnatko Dep. at 51-53; Docket No. 26 Ex. 9; Defs.' Answer Pl.'s Interrog. No. 7[11].) On January 18, 2004, Plaintiff applied for the newly-created position as advertised in the Tribune Review that same day. (Docket No. 39 Ex. 13.)

On February 3, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that EOF had eliminated her position on January 15, 2004 in retaliation for her having filed suit against the Diocese. (Docket No. 39 Ex. 6.) Father Hnatko, George Hnatko, Jr. and Jan Jennings collaborated in the creation of

---

[11]Docket No. 39 Ex. 5.

EOF's response to the EEOC charge, which they submitted on February 23, 2004.  (Hnatko Dep. at 74-75; Docket No. 39 Ex. 23.)

On March 3, 2004, the Board met again and discussed the EEOC complaint Plaintiff had filed on February 3, 2004 regarding the decision to eliminate her position.  At the meeting, the decision was made "to re-advertise the position and to continue the interviewing process until a suitable candidate can be found to fill the position of Campus Director and Fundraiser."  (Docket No. 39 Ex. 14.)  The special meeting was attended by Father Hnatko, Jan Jennings and two other Board members, Stanley Ostwinch and Paul Simitoski.  (Id.)  At the meeting, Father Hnatko said that he did not agree with Plaintiff's allegations.  (Hnatko Dep. at 84.)

At a Board meeting on March 31, 2004, David Gesue was hired to fill the new position effective April 1, 2004 and Plaintiff was terminated effective March 31, 2004.  The Board minutes state as follows:

> The board members were given David Gesue's resume, proposed job description, and fund development structure for fundraising.  He also told that [sic] the board members that Mr. Gesue will be coming shortly for an interview.  Father George again mentioned the events leading to the possible new hire of Mr. Gesue.  The position that Patty Patsakis held needed to be eliminated to make it financially feasible to hire a fundraiser for both the Homestead and Indiana Campuses.  The Homestead Campus Director position will be combined with the fundraiseing [sic] position.
>
> It was decided that if Mr. Gesue was the best candidate for the new position that Mrs. Patsakis would receive a two week severance pay along with any other monies she would be owed for vacation, sick days, etc.
>
> Mr. Gesue came and was made aware of all the above mentioned events.  He was asked questions by the committee.  The meeting was continued at the Homestead campus.  The committee felt that Mr. Gesue was the best candidate for the job and was offered the position. Mr. Gesue agreed to take the job, but said that he must start on a part-time basis.  At the conclusion of the interview the committee disbanded.
>
> Father George Hnatko, Paul Neal and Paul Simitoski stayed and asked that Patty Patsakis come into the room.  Patty was told that she was not chosen for the new position of Campus director and fundraiser.  Patty was thanked for her services

and told that she would received a two week severance pay along with any other monies she would be owed for vacation, sick days, etc.

(Docket No. 39 Ex. 8.)

Procedural History

Plaintiff filed a complaint of discrimination with the EEOC on February 3, 2004.  A right to sue letter was issued on September 29, 2004.  Plaintiff filed this action on October 29, 2004 and on March 17, 2005, she filed an Amended Complaint.  Count I alleges retaliation discrimination in violation of Title VII and Count II makes the same allegations under the PHRA.

On October 24, 2005, Plaintiff filed a motion for partial summary judgment (Docket No. 23).  On that same date, motions for summary judgment were filed by EOFSV (Docket No. 27) and EOF (Docket No. 30).

Summary Judgment

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  An issue is genuine only if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v.</u>

<u>Liberty-Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

      <u>Plaintiff's Motion for Partial Summary Judgment</u>

      In her motion for partial summary judgment, Plaintiff argues that Defendants acted as a

single employer for purposes of Title VII.  Defendants respond that they are separate entities and

that Plaintiff brought her charge of discrimination only against EOF and did not name EOFSV as

a defendant until she filed this case.

      There is considerable authority opposed to the idea of a plaintiff moving for partial

summary judgment on an affirmative defense asserted by a defendant.  Rule 56 of the Federal

Rules of Civil Procedure provides that:

> A party seeking to recover upon a claim, counterclaim, or cross-claim or to
> obtain a declaratory judgment may, at any time after the expiration of 20 days
> from the commencement of the action or after service of a motion for summary
> judgment by the adverse party, move with or without supporting affidavits for a
> summary judgment in the party's favor upon all or any part thereof.

Fed.R.Civ.P. 56(a).  The Court of Appeals for the Third Circuit has stated that this rule "does not

contemplate a summary judgment for a portion of a single claim in suit.  Neither does any other

rule of the Rules of Civil Procedure so contemplate, as far as we are aware."  <u>Coffman v. Federal</u>

<u>Labs.</u>, 171 F.2d 94, 98 (3d Cir. 1948) (citation omitted).  <u>See also</u>  <u>New Jersey Auto. Ins. Plan v.</u>

<u>Sciarra</u>, 103 F. Supp. 2d 388, 396 (D.N.J. 1998) ("Nothing in [Rule 56] can be read to allow

partial summary judgment on only one portion of a claim."); <u>Testa v. Janssen</u>, 492 F. Supp. 198,

204 (W.D. Pa. 1980) ("The Federal Rules of Civil Procedure do not provide for partial summary

judgment for a portion of a single claim."); <u>Connelly v. Wolf, Block, Schorr & Solis-Cohen</u>, 463

F. Supp. 914, 919 (E.D. Pa. 1978) (same).

      Moreover, for a plaintiff to be awarded summary judgment on an affirmative defense of a

defendant would not constitute "recovery" on that plaintiff's claim, or any part thereof.  <u>Abyaneh</u>

v. Merchants Bank, North, 670 F. Supp. 1298, 1300 (M.D. Pa. 1987).  Courts also have specifically held that it is inappropriate for a plaintiff to use Rule 56 to counter a defendant's affirmative defenses.  See Krauss v. Keibler-Thompson, 72 F.R.D. 615, 616-17 & n. 8 (D. Del. 1976).

Finally, it is noted that Plaintiff's argument is based on Nesbit v. Gears Unlimited, Inc., 347 F.3d 72 (3d Cir. 2003).  However, that case concerned the issue of the circumstances under which two or more entities, each of which had less than the threshold amount of fifteen employees, can be combined for purposes of Title VII.  In this case, each of the Defendants has admitted that it employs more than fifteen individuals.  (Am. Answer ¶¶ 4-5.)  Thus, Nesbit may not even be relevant to the issues in this case.  See Daniel v. City of Harrisburg, 2006 WL 543044, at *2 (M.D. Pa. Mar. 6, 2006) (expressing doubt that Nesbit applies in a situation in which both entities have the minimum number of employees).  For all of these reasons, Plaintiff's motion for partial summary judgment should be denied.

Defendants' Motions for Summary Judgment

In their motions for summary judgment, Defendants contend that: 1) Plaintiff has failed to exhaust her claims by presenting them to the EEOC; 2) she cannot sue EOFSV because she did not name that organization in her EEOC charge; 3) her claims are based on statements made to the EEOC that she now appears to recant; 4) she cannot state a prima facie case of retaliation discrimination; 5) assuming she can state a prima facie case of discrimination, they have proffered a legitimate nondiscriminatory reason for their decisions, namely Plaintiff's inability to develop and implement a plan to bring EOFSV to financial solvency; and 6) she has offered no evidence that this reason was a pretext for unlawful retaliation discrimination.[12]

---

[12]Defendants do not present these arguments in this fashion.  Rather, the Court has gleaned them from their identical rambling, single-spaced memoranda (Docket Nos. 29, 32) and organized them in

(continued...)

Plaintiff responds that: 1) she properly exhausted her administrative remedies by filing a charge with the EEOC and she was not required to file a second charge regarding Defendants' failure to hire her for the newly-created position because this retaliatory action fell within the scope of the pending EEOC charge and investigation; 2) the evidence demonstrates that EOF and EOFSV are one organization and not separate; 3) she has not "effectively recanted" her EEOC allegations but, instead, Defendants have interpreted her statements as direct quotations, which they were not, and misconstrued them against her; and 4-6) she has stated a prima facie case of retaliation discrimination and has presented evidence that Defendants' proffered reasons for the adverse employments actions are pretextual.

Exhaustion of Administrative Remedies

Defendants contend that summary judgment should be entered in their favor with respect to Plaintiff's March 31, 2004 termination because she did not present it to the EEOC within 300 days of its occurrence.  Indeed, Plaintiff did not file any amendments to her February 3, 2004 charge of discrimination and did not file any new charges of discrimination.  The February 3, 2004 EEOC charge challenged Defendants' act of eliminating her position in retaliation for her having sued her former employer.  Plaintiff responds that she was not required to file any further charges with the EEOC because the retaliatory termination she suffered on March 31, 2004 was reasonably related to the charge of discrimination already pending before the agency.

Title VII requires that a plaintiff file a charge of discrimination with the EEOC within 300 days of the alleged unlawful practice.  42 U.S.C. § 2000e-5(e)(1).  The PHRA requires that a plaintiff file a charge of discrimination within 180 days of the alleged act of discrimination.  43 P.S. § 959(h).

--------

[12](...continued)
order to properly address them.

In <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002), the Supreme Court held that a plaintiff cannot raise claims of discrimination unless that individual files a charge with the EEOC within 300 days of the discrete discriminatory act.  The plaintiff cannot reach back to include older conduct as a "continuing violation" even if it is related to the conduct alleged in the charge (except in the case of a hostile work environment).

The Court did not hold that incidents of discrimination that occur *after* a charge of discrimination is filed must themselves be the subject of a new charge of discrimination filed with the EEOC.  However, the Court included this sentence in its opinion: "Each discrete discriminatory act starts a new clock for filing charges alleging that act."  <u>Id.</u> at 113.  Based upon this language, some courts have concluded that discrete activity that occurs after the charge is filed must be raised in a new charge or it is barred.  <u>Martinez v. Potter</u>, 347 F.3d 1208, 1210-11 (10th Cir. 2003); <u>Bowie v. Ashcroft</u>, 283 F. Supp. 2d 25, 34 (D.D.C. 2003).  The Tenth Circuit has extended this holding and concluded that employees must file a new EEOC charge for acts of retaliation that result from their initial filing of an EEOC charge.  <u>Annett v. University of Kansas</u>, 371 F.3d 1233, 1238 (10th Cir. 2004).

Other courts have noted that "<u>Morgan</u> does not address whether a previously filed EEOC complaint must be amended to encompass subsequent acts susceptible to judicial review." <u>Rivera v. Puerto Rico Aqueduct & Sewers Auth.</u>, 331 F.3d 183, 189 (1st Cir. 2003).  With respect to post-filing conduct, they have continued to inquire, as they did prior to <u>Morgan</u>, whether such conduct reasonably would have fallen within the scope of the EEOC investigation. <u>Id.</u>  <u>See also</u> <u>Wedow v. City of Kansas City, Mo.</u>, 442 F.3d 661, 673-74 (8th Cir. 2006) (rejecting <u>Annett</u>); <u>Lyons v. England</u>, 307 F.3d 1092, 1104-05 (9th Cir. 2002); <u>Terry v. Ashcroft</u>, 336 F.3d 128, 151 (2d Cir. 2003).

The Court of Appeals for the Third Circuit has not addressed this issue since the Morgan case.  However, the court has long held that post-charge filing conduct can be raised in federal court if it is reasonably related to or reasonably could be expected to grow out of the charge of discrimination.  See Anjelino v. New York Times Co., 200 F.3d 73, 93-95 (3d Cir. 1999); Robinson v. Dalton, 107 F.3d 1018, 1025 (3d Cir. 1997); Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996); Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984); Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984); Hicks v. Abt Assocs. Inc., 572 F.2d 960 (3d Cir. 1978); Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976).  Defendants provide no persuasive authority that the Court of Appeals would conclude that Morgan abrogates this long line of cases concerning post-charge conduct.

This Court predicts that the Court of Appeals for the Third Circuit would not conclude that Morgan applies to post-filing conduct, but would continue to inquire whether the new incidents are "reasonably related to" or "reasonably could be expected to grow out of" the charge of discrimination filed with the agency.  Therefore, Plaintiff was not required to file a new charge of discrimination within 300 days of the March 31, 2004 termination unless it was not reasonably within the scope of the EEOC investigation or could not have reasonably been expected to grow out of it.

The Court of Appeals has held that allegations of retaliation arising out of a plaintiff's EEOC charge  of discrimination are generally considered to be reasonably related to the charge. Anjelino, 200 F.3d at 96; Howze, 750 F.2d at 1209-10.  Defendants cite Johnson v. Chase Home Finance, 309 F. Supp. 2d 667 (E.D. Pa. 2004).  In that case, the plaintiff's EEOC charge raised claims of hostile work environment and intentional discrimination on the basis of race, national origin, gender and age, but did not mention retaliation.  The court found that the claim of

retaliation she raised in her federal court action did not fall fairly within the scope of the EEOC

charge. It further noted that,

> in view of the total absence of any allegation of retaliation made by plaintiff in the
> formal charge, the Court finds that any EEOC investigation could not reasonably
> be expected to grow [into allegations of retaliation] out of the charge of
> discrimination, including new acts which occurred during the pendency of the
> proceedings before the Commission.

Id. at 672 (citation omitted).

In this case, Plaintiff's charge alleged that Defendants were retaliating against her for

complaining about discrimination at her former employer by eliminating her position. Thus, a

claim of retaliation was already before the EEOC. Moreover, on May 18, 2004, the EEOC held a

fact finding as part of its investigation into her allegations. (Patsakis Aff. II ¶ 9.) Plaintiff states

that, during this six-hour conference, which she attended along with Father Hnatko, George

Hnatko, Jr. and Jan Jennings, the parties discussed in detail both adverse actions taken against

her. (Patsakis Aff. II ¶ 10.) Defendants have presented no evidence to the contrary.

The EEOC determination, dated July 28, 2005, specifically states that:

> On January 15, 2004, [Plaintiff] was advised that her position was being
> eliminated and that a new position of Campus Administrator and Director of Fund
> Development was being created. Although there had been discussion about the
> hiring of a Fundraising Coordinator prior to that date, there had been no indication
> that [EOF] was considering the elimination of the [Plaintiff's] position. Although
> [Plaintiff] was advised that she could apply, and she was interviewed, she was not
> selected. On March 31, 2004, [Plaintiff] was terminated.

(Docket No. 39 Ex. 34 at 3.) Thus, the record demonstrates that Plaintiff's allegations of a

retaliatory termination not only could reasonably have been expected to grow out of the scope of

the investigation but were actually raised and addressed during the investigation the EEOC was

conducting. Therefore, Plaintiff was not required to file another charge of discrimination relating

to the termination. This argument for summary judgment should be rejected.

Failure to Name EOFSV in EEOC Charge

Defendants argue that Plaintiff cannot sue EOFSV because she did not name this organization in her EEOC charge, but instead named only EOF.  Plaintiff has admitted that she named only EOF and that she did not inform the EEOC that there were two separate organizations.  (Patsakis Dep. at 74, 109.)  However, she states that she did not understand that they were separate "because I always answered to Indiana."  (Id. at 25.)  She believed that EOF was the parent corporation of EOFSV.  (Id. at 26.)  She also argues that EOF and EOFSV have held themselves out as a single entity.

Defendants cite no cases discussing this issue.  A Title VII action ordinarily may be brought only against a party named in an EEOC charge.  42 U.S.C. § 2000e-5(f)(1).  "The purpose of requiring an aggrieved party to resort first to the EEOC is twofold: to give notice to the charged party and provide an avenue for voluntary compliance without resort to litigation." Glus v. G. C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977).  However, "[w]e do not believe that the procedures of Title  VII were intended to serve as a stumbling  block  to the accomplishment of the statutory objective."  Id. (citation omitted).  In Glus, the Court of Appeals enumerated four factors that should be considered in determining whether an unnamed party may be sued.

More recently, the court has indicated that it "recognizes an exception when the unnamed party received notice and when there is a shared commonality of interest with the named party." Schafer v. Board of Public Ed. of Sch. Dist. of Pittsburgh, 903 F.2d 243, 252 (3d Cir. 1990). Defendants have not argued that EOFSV did not have notice of the EEOC proceeding or that it does not share a commonality of interest with EOF.

It is noted that the March 3, 2004 meeting at which Plaintiff's EEOC charge was discussed was a board meeting for both EOF and EOFSV. (Docket No. 39 Ex. 14.)  The record

demonstrates that EOFSV had notice of the EEOC proceeding and that it shares a commonality of interest with EOF.  Therefore, this argument is unavailing.[13]

<u>Title VII/PHRA Claims of Retaliation Discrimination</u>

Under Title VII, it is an unlawful employment practice to discriminate against any employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  The same is true under the PHRA.  43 P.S. § 955(d).

In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case of discrimination indirectly following the shifting burden analysis set forth by the Supreme Court in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 802 (1973) and refined in <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981).  <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 278-79 (3d Cir. 2000).  This model also applies to actions brought pursuant to the PHRA.  <u>See</u> <u>Weston v. Commonwealth of Pa.</u>, 251 F.3d 420, 425 n.3 (3d Cir. 2001).

If the employee presents a prima facie case of discrimination, the employer must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." <u>McDonnell Douglas</u>, 411 U.S. at 802.  If the employer specifies a reason for its action, the employee must have an opportunity to prove the employer's reason for the adverse employment

---

[13]In their briefs in opposition to Plaintiff's motion for partial summary judgment, Defendants argue in passing that Plaintiff cannot sue EOF because she did not work for that separate organization. (Docket Nos. 40, 42.)  However, the Court should not address Plaintiff's motion, for the reasons stated above.  Moreover, Defendants do not present this argument in their own motions for summary judgment, they cite no authority in support of it and, as discussed throughout this Report and Recommendation, Defendants' hypertechnical arguments are not in keeping with a "primary purpose of antiretaliation provisions: Maintaining unfettered access to [Title VII's] remedial mechanisms."  <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 346 (1997)

action was a pretext for unlawful discrimination.  Id. at 804.  The Court of Appeals for the Third Circuit has stated that:

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered  legitimate  reasons must allow a factfinder to reasonably infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action  (that is, the proffered reason is a pretext).

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).

### Statements in Plaintiff's EEOC Charge

Defendants argue that Plaintiff has "effectively recanted" certain statements made in her EEOC charge.  In paragraph five of her EEOC charge, Plaintiff stated that "Respondent informed me on January 15, 2004 that my position was going to be advertised in the newspaper in retaliation for filing a complaint in an unrelated matter against the Greek Orthodox Archdiocese, in federal court at Civil Action No. 03-1851."  (Docket No. 39 Ex. 6 at 3 ¶ 5.)  Defendants argue that, in her deposition, Plaintiff admitted that no one informed her that her position was going to be advertised in retaliation for her having filed a lawsuit against her former employer.  (Patsakis Dep. at 77, 79, 81.)  Plaintiff states in her affidavit that the sentence in her EEOC charge merely identified the unlawful basis she believed Defendants used in deciding to eliminate her position and advertise the newly-created position in the newspaper.  (Patsakis Aff. II ¶ 11.)

In paragraph three of the affidavit accompanying her EEOC charge, she wrote "Shortly after Father Hnatko found out about my pending litigation against the Greek Orthodox Archdiocese, he fired me."  (Docket No. 39 Ex. 6 at 4 ¶ 3.)  Defendants argue that this statement is untrue, because Father Hnatko found out about the litigation around December 5, 2003, but Plaintiff was not terminated until March 31, 2004.  They also note that the statement is untrue because it was dated February 3, 2004, but Plaintiff was not terminated until March 31, 2004.

Plaintiff responds that, beginning within days of Father Hnatko reading the article about her lawsuit, Defendants began to take adverse actions against her.  On December 10, 2003, she was informed that they were "disappointed" with her; within a month thereafter, her position had been eliminated; even though she applied for the new position, she was not considered but instead an outsider was recruited and she was terminated.

Defendants cite no authority to support the argument that statements made by a plaintiff in her EEOC charge can be used against her in this manner.  On the contrary, the statute, regulations and caselaw indicate that Plaintiff has satisfied all of the requirements to administratively exhaust her claims and bring suit.

Title VII states that charges of discrimination "shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires."  42 U.S.C. § 2000e-5(b).  Another section provides that the charge shall be filed within a certain amount of time (180 or 300 days) after the alleged unlawful employment practice occurs.  42 U.S.C. § 2000e-5(e)(1).  "Neither provision defines 'charge,' which is likewise undefined elsewhere in the statute."  Edelman v. Lynchburg College, 535 U.S. 106, 112 (2002).

The regulations state that a "charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  29 C.F.R. § 1601.12(b).[14]  The Court of Appeals has held that in order to constitute a charge of discrimination, "notice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery."  Bihler v. Singer Co., 710 F.2d 96, 99 (3d Cir. 1983).

---

[14]In Edelman, the Supreme Court held that this regulation, which also permits a plaintiff to supplement a timely-filed charge with a verification filed after the time for filing has expired by relating it back to the time the charge was filed, is an unassailable interpretation of Title VII.  535 U.S. at 118.

In this case, the EEOC acted upon the charge, investigated, held a fact-finding conference and issued a determination concluding that Plaintiff has established a claim of retaliation discrimination. The EEOC's determination clearly indicates that the agency understood the nature of Plaintiff's claims and addressed them. Defendants have not argued that Plaintiff's notice was not of a kind to convince a reasonable person that she had manifested an intent to activate the Act's machinery and the evidence demonstrates that she had this intent and that the machinery was activated.

Plaintiff has satisfied all the administrative prerequisites required of her and the Court should proceed to address her claims of retaliation discrimination on the merits. This argument should be rejected.

<u>Plaintiff's Prima Facie Case</u>

The Court of Appeals has stated that:

> To establish a prima facie case of retaliation, a plaintiff must show that: (1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneously with the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action.

<u>Weston</u>, 251 F.3d at 430 (citations omitted).

Defendants concede that Plaintiff engaged in protected activity when she filed a complaint alleging discrimination by her former employer and when she filed an EEOC charge complaining of retaliation by EOF in eliminating her position. However, they contend that: 1) she did not suffer an adverse employment action at the time she filed her EEOC charge (she had not yet been fired) and in the way in which she complains (Father Hnatko did not tell her that her position was being eliminated in retaliation for filing suit against the Diocese); and 2) the time that elapsed between when they learned of her protected activity (December 5, 2003) and when they allegedly took the adverse employment action against her (March 31, 2004) is too lengthy to

be considered unduly suggestive.  Plaintiff responds that she suffered two adverse employment

actions, the elimination of the position and the termination, and that the timing of each, along

with other evidence, is sufficient to establish a prima facie case of retaliation discrimination.

<u>Adverse Employment Action</u>

Defendants' arguments about Plaintiff's adverse employment action are a reiteration of

the arguments described above that her claims were not administratively exhausted or that she

"effectively recanted" statements made in her EEOC charge.  For the reasons described above,

these arguments should be rejected.  Plaintiff's first claim–both before the EEOC and this

Court–is not that she was told she was being retaliated against for suing the Diocese, but that

Defendants' elimination of her position constituted an adverse employment action taken in

retaliation for suing the Diocese.  Eliminating an employee's position in retaliation for that

employee's having filed a discrimination suit against a prior employer would constitute an

unlawful employment practice under Title VII.  <u>See</u> <u>McMenemy v. City of Rochester</u>, 241 F.3d

279, 284 (2d Cir. 2001) ("Title VII protects an employee from *any* employer, present or future,

who retaliates against him because of his prior or ongoing opposition to an unlawful employment

practice or participation in Title VII proceedings.")  <u>See also</u> <u>Christopher v. Stouder Mem. Hosp.</u>,

936 F.2d 870, 873-74 (6th Cir. 1991); <u>Ghirardelli v. McAvey Sales & Service, Inc.</u>, 287 F. Supp.

2d 379, 386-87 (S.D.N.Y. 2003), <u>aff'd mem.</u>, 98 Fed. Appx. 909 (2d Cir. 2004).  <u>See generally</u>

EEOC Compliance Manual § 8-II(B)(3)(d).  Prohibiting employers from retaliating against an

employee for having sued a prior employer for discrimination is consistent with the plain

language of Title VII and the primary purpose of the retaliation clause, namely "maintaining

unfettered access to [Title VII's] remedial mechanisms." Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997).[15]

Plaintiff's second claim before this Court–which was actually raised and addressed during the investigation conducted by the EEOC–is not that, shortly after Father Hnatko found out about her suit against the Diocese, he fired her, but that the decision to hire David Gesue and terminate her employment constituted an adverse employment action taken in retaliation for her having filed an EEOC charge against EOF. Terminating an employee's employment in retaliation for that employee's having filed an EEOC charge would constitute an unlawful employment practice under Title VII. See Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005).

Causal Link

The Court of Appeals has explained that a plaintiff can substantiate a causal connection between the protected activity and an adverse employment action by: 1) showing that the temporal proximity is "unduly suggestive"; or 2) showing "inconsistencies in the defendant's testimony"; or 3) pointing to ongoing antagonism. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000). The court has noted that, "[w]ith one exception, we have never held that timing alone can be sufficient to establish causation." Weston, 251 F.3d at 431 n.5 (citing a case in which an employee's dismissal two days after the company learned of his EEOC complaint was sufficiently persuasive to satisfy the causation element). In Weston, the court held that alleged incidents more than one year apart, without other evidence, were insufficient to establish a causal link. Id. at 431-32.

Defendants argue that the delay of two and half months between the time they learned of Plaintiff's protected activity and the time they allegedly retaliated against her by terminating her employment is too lengthy to be considered unduly suggestive. Plaintiff argues that she is raising

---

[15]In Robinson, the Supreme Court held that Title VII's retaliation provision extends to former employees.

two separate adverse employment actions, that the first one occurred on January 15, 2004 (a little more than six weeks after they learned of her protected activity on December 5, 2003), that the second one occurred on March 31, 2004 (five weeks after they must have known of her protected activity because they filed a response to her EEOC charge on February 23, 2004), and that each of these of these time periods is short enough to be unduly suggestive.

In Farrell, the Court of Appeals examined the record as a whole and concluded that the plaintiff established a prima facie case of retaliation by pointing both to a three to four-week period between the protected activity and the adverse employment action, which the court viewed as suggestive, and to other events such as inconsistencies in the record: Farrell's performance was praised just before her position was eliminated and she was terminated just after her employer purchased her house in Maryland and moved all of her possessions to North Carolina. 206 F.3d at 280, 285.

In this case, the time periods are close. However, the Court need not decide whether the time periods alone are sufficient. As summarized below, Plaintiff has pointed to discrepancies in Defendants' proffered reasons for their actions and ongoing antagonism sufficient to establish a causal link. Therefore, she has stated a prima facie case of retaliation discrimination.

Defendants' Proffered Reasons and Plaintiff's Evidence of Pretext

The burden of production therefore shifts to Defendants to articulate a legitimate, non-discriminatory reason why Plaintiff's job was eliminated and why she was not hired for the newly-created position. In their memoranda, they state that:

> Ms. Patsatkis was terminated due to her inability to develop and implement a plan to bring EOFSV to financial solvency. It is telling that Ms. Patsakis disagreed with the Board's determination that EOFSV should be more financially solvent. Ms. Patsakis was in sole charge of the Homestead campus from December 10, 2003 until March 31, 2004. She had every opportunity to turn around the negative cash flow and, as she had promised the Board, enter into leases and develop the personal care beds to relieve the negative cash flow in the first quarter of 2004. Instead, the negative cash flow continued and was

21

scheduled, with the loss of a major tenant to increase by 50%. With three months of funds remaining, Ms. Patsakis had taken no steps to increase the credit line. It is not just that Ms. Patsakis should have known the dire financial condition of EOFSV from the reports, she prepared the reports. After spending over $500,000.00 in a year without decreasing the monthly negative cash flow, it would have been a breach of the Directors['] fiduciary duty to permit Ms. Patsakis to continue in her position. Simply put, the corporation would not have survived.

(Docket Nos. 29, 32 at 4.)

In response to an interrogatory inquiring as to each and every reason why Plaintiff was

terminated, Defendants wrote:

EOF-SV was under desperate circumstances because expenses were far in excess of revenue. Mrs. Patsakis was unable or unwilling to generate revenue and/or reduce expenses. Mrs. Patsakis's position was combined with a fundraising position. [Mrs.] Patsakis applied for the new position, but was not picked for that position. David Gesue was hired on April 1, 2004 for the position of Campus Director and Fund Raiser. It was felt that he was the best candidate for the new position. After her termination, it was discovered that Mrs. Patsakis's employment application was incomplete and incorrect. After her termination, it was discovered that Mrs. Patsakis had been insubordinate. Mrs. Patsakis's performance was substandard.

(Defs.' Answer Pl.'s Interrog. No. 7.)

Plaintiff participated in a study with a consultant named Ketchum, who was paid

$30,000.00 to conduct a study on a capital campaign. (Patsakis Dep. at 149-50.) Ketchum's

final report, delivered on or about December 1, 2003, recommended hiring a fund raiser for one

or two years at the rate of $50,000.00 a year and it also recommended rehiring Ketchum for

$49,200.00 a year. (Id. at 152; Patsakis Aff. II ¶ 7.) Defendants contend that on January 15,

2004, Plaintiff was notified that her position was being combined with the fundraiser position

recommended by Ketchum. However, Plaintiff notes that Defendants cite no record evidence to

support this statement.

EOFSV at times had a monthly negative cash flow of $30,000.00. (Patsakis Dep. at 52.)

By January 2004, approximately $100,000.00 of the credit line remained. (Id. at 172-73.)

Plaintiff believed fundraising and developing more tenants could positively affect the cash flow.

22

(Id. at 53.)  EOFSV's revenue was predicted to drop by $15,000.00 a month when Propel moved out in June 2004.  (Id. at 61.)

Defendants note that Plaintiff was unable to get LSI or D4NR as tenants.  (Patsakis Dep. at 61, 91, 164, 173.)  They also state that Plaintiff planned to double the number of personal care beds by renovating the Willis Building, but that she had not received the administrative approval from Harrisburg by the time she left in March after informing the Board that it would be open in January or February.  (Id. at 98-99, 157.)

Plaintiff participated in a report indicating that there was every reason to believe that five new leases would be entered into and only one occurred.  (Patsakis Dep. at 159.)  The report further stated that the primary purpose was to relieve EOFSV from the onerous average deficit of more than $30,000.00 per month by the first quarter of 2004.  (Id. at 160.)  Plaintiff's January 2004 report indicated $35,529.00 in bills to pay, $557,915.00 in balances due on past accounts.  (Id. at 145-46.)

EOFSV had less than three months before it would be out of funds.  (Patsakis Dep. at 201.)  Neither EOF nor EOFSV received large donations from the Greek Orthodox Diocese.  (Id. at 188.)  Defendants note that Plaintiff had not had any discussions with Great American Federal to extend the line of credit and had no back up plan if Great American Federal did not extend the line of credit.  (Id. at 147.)

To the extent that Defendants have proffered evidence that the reason why Plaintiff's position was eliminated and combined with the fundraising position was because of EOFSV's financial situation, they have met their burden of production.[16]  The Court therefore turns to the third stage of the McDonnell Douglas/Burdine analysis.

---

[16]To the extent that they argue that Plaintiff's employment application was incomplete and incorrect, that she was insubordinate and that her performance was substandard, these reasons will be addressed below.

Plaintiff is thus required to point to evidence from which the trier of fact could conclude that Defendants' proffered reason is a pretext for unlawful retaliation discrimination. She proceeds along "Fuentes prong one" by arguing that she has submitted evidence from which a factfinder could reasonably disbelieve the employer's articulated legitimate reason. Keller v. ORIX Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc). She also proceeds along "Fuentes prong two" by pointing to evidence that "allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Keller, 130 F.3d at 1111.

Fuentes Prong One

With respect to the issue of not obtaining certain entities as tenants, Plaintiff responds that LSI did not become a tenant for reasons having nothing to do with her and that D4NR did not acquire the necessary funding to pay the lease or start a non-profit company. (Patsakis Aff. II ¶¶ 5-6.) With respect to the issue of opening the Willis Building, Plaintiff responds that, as of the date she left, it had not been opened as a personal care facility. (Patsakis Dep. at 157-59.) With respect to Great American Federal, Plaintiff responds that she was aware that it would have extended the line of credit if necessary. (Patsakis Aff. II ¶ 8.) With respect to EOF's financial condition, Plaintiff notes that, at a Board meeting on January 23, 2004, Father Hnatko said "we have always had financial problems, but things are not as bad as they mentioned." (Docket No. 39 Ex. 25.)

Neither Father Hnatko nor another else had any conversations about eliminating Plaintiff's position before he read the newspaper article about her litigation on December 5, 2003. (Hnatko Dep. at 117; Hnatko Jr. Dep. at 25, 28[17]; Docket No. 39 Ex. 12.) Plaintiff notes that, in their EEOC Position Statement, Defendants indicated that "[p]rior to and since Ms.

---

[17]Docket No. 39 Ex. 2.

Patsakis joined the staff of the Eastern Orthodox Foundation the organization has been financially stressed due to numerous factors beyond the control of Ms. Patsakis." (Docket No. 39 Ex. 23 at 4.)  Father Hnatko agreed that the Homestead Campus "has never made money" and that "we were paying out more than what we were getting in," even to this day. (Hnatko Dep. at 85-86.)  See also Hnatko Jr. Dep. at 26.

Father Hnatko is unable to explain why he did not wait until the deadline passed or why he did not give Plaintiff a shorter deadline by which to respond before he informed her of the decision to eliminate her position and consolidate it with a new one. (Hnatko Dep. at 71.)  The Meeting Minutes of January 15, 2004 make no reference to the January 16, 2004 deadline. (Hnatko Dep. at 72; Docket No. 39 Ex. 10.)  Father Hnatko does not recall if the Board saw the January 10 letter before he gave it to Plaintiff or if the members were aware that he gave her a deadline of January 16 by which to respond. (Hnatko Dep. at 71-72.)  Plaintiff nevertheless prepared and sent a written response on January 14, 2004. (Patsakis Dep. at 46-47.)  Without waiting for the deadline to pass or read her response, Defendants informed Plaintiff on January 15, 2004 that her position was being eliminated. (Hnatko Dep. at 71; Docket No. 39 Ex. 10.)

Plaintiff testified that she opposed the change but said nothing because the decision had been made and she had no choice but to accept it. (Patsakis Dep. at 196-98.)  Father Hnatko admitted that she did not agree with this change. (Hnatko Dep. at 53.)

Plaintiff has pointed to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendants' proffered reason "that a reasonable factfinder *could* rationally find [it] unworthy of credence." Fuentes, 32 F.3d at 765 (citations omitted).  The factfinder will have to evaluate whether Defendants' articulated reason is a pretext for unlawful retaliation discrimination.

Fuentes Prong Two

Plaintiff has also submitted evidence from which the trier of fact could conclude that retaliation was more likely than not a determinative factor in the decision to eliminate her position.  Father Hnatko stated that he believes Plaintiff should have told him about her litigation because he was "her employer" and "her CEO."  (Hnatko Dep. at 59.)  He was "hurt" that she did not tell him in advance that she was going to pursue litigation against her former employer.  (<u>Id.</u> at 64.)  He also testified that she should have told him because it was important for him to know because of her position.  (<u>Id.</u> at 67.)  Father Hnatko stated that Plaintiff's litigation "reflects on" EOFSV.  (<u>Id.</u> at 60.)  He was angry over her litigation against her former employer.  (Docket No. 39 Ex. 20.)  He admitted that she never told him she was unwilling to do her job.  (Hnatko Dep. at 87.)

Jan Jennings testified that "it is a tradition that I think is long respected, that if you as a salaried-exempt person are in the public eye, that your employer be aware of it."  (Jennings Dep. at 35.)  He further stated that he was "disappointed that she is suing the Eastern Orthodox Foundation" and that her actions in doing so were "reprehensible."  (<u>Id.</u> at 48.)

George Hnatko, Jr. testified that "It is my business if it relates in some way to our work place, positively or negatively, we should know."  (Hnatko Jr. Dep. at 29.)  He further stated that she should not have sued "the church" because it is a "sacred thing" and she "was not right" for doing so.  (<u>Id.</u> at 37.)  He shared his feelings with Father Hnatko.  (<u>Id.</u> at 38.)  He indicated that adverse "things shouldn't happen to [the] church."  (<u>Id.</u> at 40.)

Board member Peter Natyshyn stated that Plaintiff should have disclosed her litigation because "it is a reflection on the entire Foundation."  (Natyshyn Dep. at 15.)[18]  Another Board member, Father Stefan Zencuch, testified that, "from the perspective of Christian ethics, it was wrong" for Plaintiff not to disclose her prior litigation to her new employer.  (Zencuch Dep. at

---

[18]Docket No. 39 Ex. 16.

38.)[19]  He also indicated that he could not state that he would have hired her had he known of her lawsuit.  (Id. at 39-40.)

Board member George Olenic stated that she should have warned EOF and EOFSV in advance of her plan to sue her former employer and that it was "not a good thing" or a "healthy thing" that she did not.  (Olenic Dep. at 11.)[20]  He believes that Defendants "had a right" to know about it.  (Id.)  Board member Paul Simitoski also stated that Plaintiff's failure to disclose her prior litigation was "a bad thing" and he does not know if Defendants would have refused to hire her had they known of her lawsuit.  (Simitoski Dep. at 26.)[21]  He did not think it was wrong for Father Hnatko and Jan Jennings to tell her they were disappointed about her lawsuit.  (Id. at 52.)

This evidence should be considered by the trier of fact, who will determine whether retaliation was more likely than not a determinative factor in the decision to eliminate Plaintiff's position.  The factfinder will have to evaluate whether Defendants' articulated reason is a pretext for unlawful retaliation discrimination.

<u>Decision to Hire Someone Else for New Position</u>

With respect to the second adverse employment action–not hiring Plaintiff for the newly-created position–Plaintiff notes that one of Defendants' explanations is that David Gesue was the "right person for the job."  She correctly observes that the Court of Appeals has held that this explanation, without more, is insufficient for an employer to meet its burden of producing a legitimate, nondiscriminatory reason for the adverse employment action.  See Iadimarco v. Runyon, 190 F.3d 151, 166-67 (3d Cir. 1999).

---

[19]Docket No. 39 Ex. 17.

[20]Docket No. 39 Ex. 18.

[21]Docket No. 39 Ex. 19.

Moreover, even assuming that Defendants' reason is sufficient, and even considering Defendants' suggestion that Plaintiff's performance was "substandard," Plaintiff has proffered sufficient evidence that these proffered reasons are pretextual.  On December 2, 2003, just three days before the article about her litigation appeared in the newspaper, Jan Jennings sent her an email telling her she was "the best thing that has happened to the EOF in twenty years." (Docket No. 39 Ex. 22.)  He also encouraged Plaintiff to apply for the newly-created position in 2004, but in this litigation he has testified that she was "completely unqualified for the job." (Jennings Dep. at 49.)[22]

Although Defendants cite Plaintiff's deposition at page 45 to support the statement that she "took no action to change her conduct based on the meeting of December 10, 2003 or the letter of January 10, 2004" (Docket No. 28 ¶ 24), her actual testimony was that she continued calling, sending communications, showing the property, continued her meetings, that she sent Father Hnatko more communications of her day-to-day activities and that she tried to call Father Hnatko many times to ask him specifically what he wanted, but he never returned her calls.

As noted above, on January 10, 2004, the Board met and decided "to send Patty Patsakis a letter stating that we are dissatisfied with her overall performance.  This way we will have a record of our dissatisfaction.  We will mail her the letter within the next week." (Docket No. 39 Ex. 12.)

Although various Board members and Father Hnatko decided to hire David Gesue, Father Hnatko was unable to provide a detailed explanation of why they did so.  (Hnatko Dep. at 89-90.)

---

[22]Docket No. 39 Ex. 21.

In discovery, Defendants represented that all fifteen members of the Board decided to hire David Gesue instead of Plaintiff for the new position.  (Defs.' Answer Pl.'s Interrog. No. 8.)[23] Father Hnatko confirmed this answer.  (Hnatko Dep. at 54.)

Yet the individual Board members testified differently.  George Boychuck was unaware of any decision to change in Plaintiff's job, had no involvement in the hiring of David Gesue and did not know Patsakis has applied for the position.  (Boychuck Dep. at 24-26, 28.)[24]

Michael Lawer was unaware that Defendants told Plaintiff her job was being reorganized and did not recall if he had any involvement in the decision to hire the other individual for the new position.  (Lawer Dep. at 19, 31.)[25]  Nicholas Palovich did not know who made the decision to hire the other individual for the new position, he did not know who believed Gesue was the best candidate for the new position and he knew nothing about Plaintiff's performance being substandard.  (Palovich Dep. at 26, 32-33.)[26]  Father Stephan Zencuch thought there were two separate positions open and Gesue filled one of them (he was unaware of who filled the other). He did not know Plaintiff was terminated and never heard any criticism of her performance. (Zencuch Dep. at 31-33, 50.)  Stanley Ostwinch testified that Father Hnatko, and not the Board, makes the hiring and firing decisions.  (Ostwinch Dep. at 10.)[27]  He did not recall if he agreed that Gesue was the best choice or even who he thought should have been hired for the new position.  (Id. at 15.)

---

[23]Docket No. 39 Ex. 5.

[24]Docket No. 39 Ex. 26.

[25]Docket No. 39 Ex. 27.

[26]Docket No. 39 Ex. 28.

[27]Docket No. 39 Ex. 29.

Paul Simitoski testified that he had not been involved in employment decisions. (Simitoski Dep. at 8.)  He was also unaware of any criticism Father Hnatko gave Plaintiff regarding her performance.  (Simitoski Dep. at 38, 40.)  John Berezniak did not even know who Gesue is.  (Berezniak Dep. at 5-6.)[28]  He was not involved in the decision to change Plaintiff's job.  (Id. at 7.)  He was also unaware that Plaintiff had to reapply for her job.  (Id. at 9.)  In fact, he thought she quit and was unaware that she had been terminated.  (Id. at. 6.)

Peter Natyshyn could not recall being involved in the decision to change her employment. (Natyshyn Dep. at 7-8.)  He did not recall that she had to reapply for the new position, was unaware of any alleged performance deficiencies and was not involved in the decision to hire Gesue.  (Id. at 8, 11-13.)  Richard Youchak was unaware that Plaintiff applied for the new position. (Youchak Dep. at 32.)[29]  Charles Shuhilo was never told of any criticism and thought Plaintiff was doing "fine" at her job.  He was never told that she was unable to do her job or generate revenue, that her application had been incomplete or incorrect, or that she had been insubordinate.  (Shuhilo Dep. at 14-15, 17.)[30]

Defendants also raise two later-discovered reasons to support their decisions: alleged deficiencies in Plaintiff's employment application and alleged insubordination.  They note that Plaintiff did not complete the question on her employment application asking her to list the names of her last three employers.  (Patsakis Dep. at 84-85.)  They further note that the application contained the statement "I certify that the facts contained in this application are true and complete to the best of my knowledge and understand that if employed, falsified statements in this application shall be grounds for dismissal."  (Patsakis Dep. at 84.)  In discovery,

---

[28]Docket No. 39 Ex. 30.

[29]Docket No. 39 Ex. 31.

[30]Docket No. 39 Ex. 24.

Defendants have asserted that "[a]fter her termination, it was discovered that Mrs. Patsakis's employment application was incomplete and incorrect." (Defs.' Answer Pl.'s Interrog. No. 7.)

Although they have not specifically stated it, Defendants appear to be suggesting that Plaintiff's failure to list her prior three employers on her employment application constitutes "after-acquired evidence." The Supreme Court has held that after-acquired evidence does not bar an employee's discrimination suit, but may be used to bar reinstatement and front pay and limit backpay to the period prior to the discovery of this evidence. McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 362 (1995). The definition of after-acquired evidence is "evidence of the employee's ... misconduct or dishonesty which the employer did not know about at the time it acted adversely to the employee ... but which it discovered at some point prior to, or more typically, during, subsequent legal proceedings." Mardell v. Harleysville Life Ins. Co., 31 F.3d 1221, 1222 (3d Cir. 1994).

Plaintiff has testified that she and Father Hnatko discussed her problem with the Diocese during her employment interview, but Father Hnatko said he did not want to know the specifics because it did not pertain to him. (Patsakis Dep. at 30; Patsakis Aff. II ¶ 1[31].) Defendants cite this fact in their Concise Statement of Material Facts (Docket No. 28 ¶ 5.) They have not explained why Plaintiff's failure to list her last three employers is significant when they appear to concede that she told Father Hnatko that she was previously employed by the Diocese and had problems there.

Moreover, "[w]here an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." McKennon, 513 U.S. at 362-63. Defendants have failed to demonstrate

---

[31]Docket No. 26 Ex. 29.

that Plaintiff's failure to list her last three employers on her employment application constitutes wrongdoing at all, much less such "severe wrongdoing" that her discharge would have been a justified response. Thus, they have failed to demonstrate that it constitutes after-acquired evidence as that term is meant in discrimination law.

Defendants also state that, after her termination, they discovered that Plaintiff had been insubordinate. However, they have not explained what this comment means.

To the extent that Defendants are suggesting that they would have been justified in terminating Plaintiff's employment had they known that she was suing her prior employer or that she intended to do so, this argument naturally would fail because such a termination would constitute retaliation discrimination. They have also failed to provide any support for the contention that they had a "right to know" about her litigation.

For these reasons, it is recommended that the motion for partial summary judgment submitted on behalf of Plaintiff (Docket No. 23) be denied. It is further recommended that the motion for summary judgment submitted on behalf of Defendant Eastern Orthodox Foundation of Steel Valley (Docket No. 27) be denied. It is further recommended that the motion for summary judgment submitted on behalf of Defendant Eastern Orthodox Foundation (Docket No. 30) be denied.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
AMY REYNOLDS HAY

United States Magistrate Judge

Dated:   17 May, 2006

cc:     Hon. David S. Cercone
        United States District Judge

        Colleen Ramage Johnston, Esquire
        Rothman Gordon, P.C.
        Grant Building, Third Floor
        Pittsburgh, PA 15219

        Timothy W. Pawol, Esquire
        695 Doris Drive
        Pittsburgh, PA 15243